IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUZANNE SCHEER                    *
                                  *
          Plaintiff,              *
                                  *
v.                                *    Civil Action No. WC 12-3776
                                  *
COSTCO WHOLESALE CORP.            *
                                  *
          Defendant.              *
                                  *

## MEMORANDUM OPINION

Presently pending are (1) Defendant's Motion to Strike the testimony of Dr. Mark A. Peterson and Richard T. Hughes, P.E., ECF No. 31, and (2) Defendant's Motion for Summary Judgment, ECF No. 40. For the reasons set forth below, Defendant's motion to strike will be granted in part and denied in part and its motion for summary judgment will be denied.

## 1. Background.

This case arises out of an alleged trip and fall that occurred in the lower level of Defendant's parking deck. ECF No. 2 at 3. Plaintiff, Suzanne Scheer, claims that the parking area was very dark when she parked her car and attributes this alleged darkness to a number of unilluminated lights in the surrounding area. ECF No. 41-1 at 5. After Plaintiff parked and exited her vehicle, she began walking toward the entrance of the store when she tripped and fell. *Id.* at 7. Plaintiff claims that she was watching where she was walking but did not see what caused her to fall until after she fell. *Id.* at 8. Plaintiff testified that "after I got up I saw these parking stops that were among the parking spaces facing parallel to the spaces" and maintains that she tripped over one of these parking barriers. *Id.* at 9.

Plaintiff filed suit against Defendant, Costco, on November 29, 2012 in the Circuit Court for Montgomery County, ECF No. 2-1, requesting $400,000 for the injuries sustained from

falling to the ground.  ECF No. 2 at 4.  Plaintiff alleges that Defendant created a dangerous

condition by negligently placing these parking barriers in a poorly lit, unexpected area of the

parking deck.  *Id.* at 2.  The case was removed to this court on diversity grounds.  ECF No. 1.

    On December 28, 2012, the Court issued a scheduling order.  ECF No. 9.  Pursuant to

this order, Plaintiff was required to disclose her experts by February 26, 2013.  ECF No. 26 at 1.

Plaintiff failed to do so.  *Id.*  On March 18, 2013, during Plaintiff's deposition, Plaintiff's counsel

stated that he intended to secure experts for trial and Defendant's counsel notified Plaintiff's

counsel that it was too late to do so.  ECF No. 26 at 2; ECF No. 17-5.  Nevertheless, Plaintiff's

counsel served Defendant's counsel with expert disclosures on April 18, 2013, the deadline for

the Rule 26(e)(2) supplementation of disclosures and responses.  ECF No. 26 at 2.  The

disclosures identified her treating physician, Dr. Mark A. Peterson, M.D., as her medical expert,

and an engineer, Richard T. Hughes, P.E., as her liability expert.  ECF No. 31-2.

    On April 26, 2013, Defendant filed a motion *in limine* to exclude the testimony of these

witnesses.  Defendant argued that both disclosures were untimely and asserted that Hughes's

report did not provide any underlying data to support his conclusions and that Dr. Peterson's

disclosure did not adequately explain his expected testimony.  ECF No. 31-1 at 2.  In response to

the timeliness issue, Plaintiff's counsel provided the following explanation:

> For reasons that Plaintiff's counsel can only surmise and consider, he first became
> aware of the issuance of the Scheduling Order on March 18, 2013, when the
> expert disclosure deadline was mentioned by counsel for Defendant on that same
> date at Plaintiff's deposition.  Following Plaintiff's deposition, counsel for
> Plaintiff immediately called chambers to inquire about when the Scheduling
> Order had been electronically issued and was advised that it was December 28,
> 2012.  Plaintiff's counsel requested and obtained a copy of the Order directly
> from the Clerk's office to verify the same.  It is believed that Plaintiff's counsel
> had inadvertently deleted the electronic transmission.

ECF No. 21-1 at 2.  Plaintiff's counsel went on to explain that he believes the e-mail with the

scheduling order was inadvertently deleted because, other than one case that he "was no longer involved in," "Plaintiff's counsel had no other active cases in this Court to consider in his e-mail inbox," thus, "those transmissions were routinely deleted without being opened." *Id.* Defendant responded to Plaintiff's representation this way:

> Scheer's counsel offers no excuse for his failure to take any action after discovering the Scheduling Order on March 18, 2013. First, Scheer's counsel inexcusably failed to request a scheduling order modification from the Court or notify Costco of his mistake. Next, Scheer's counsel inexcusably waited a month after discovering the Scheduling Order on March 18, 2013, to disclose Scheer's experts. Finally, Scheer's counsel improperly filed Scheer's 26(a)(2) designations as Rule 26(e) supplemental designations, further demonstrating his noncompliance with Federal Rules of Civil Procedure.

ECF No. 23 at 10 (citations omitted).

On June 5, 2013, the Court entered an order addressing Defendant's motion *in limine*. ECF No. 26. The Court agreed with the above observations of Defendant's counsel. *Id.* at 3. The Court noted:

> Even if Plaintiff's counsel unintentionally deleted the electronic notice of the scheduling order, once Plaintiff's counsel became aware of and obtained a copy of the scheduling order, he did nothing. He knew the deadline for expert disclosures had elapsed but he intended to designate experts on his client's behalf. He did not move for an extension of time of the scheduling order. Under these circumstances the Court finds Plaintiff's belated expert disclosures were not substantially justified.

*Id.* at 3. The Court also concluded that the belated expert disclosures were not harmless because Defendant's general litigation strategy and decision to forgo designating experts was dependent on Plaintiff's decision not to designate experts. *Id.* at 4. Despite these findings, the Court did not exclude the testimony because the dispute arose well before the dispositive motions deadline and the case had not yet been scheduled for trial. *Id.* Instead, the Court gave Plaintiff another opportunity to cure the harm suffered by Defendant by ordering Plaintiff's counsel to ensure that "the reports of Mark A. Peterson, M.D. and Richard T. Hughes, P.E. *fully and completely*

comply with Rule 26(a)(2)(B) and/or Rule 26(a)(2)(C)" by June 27, 2013.  *Id.* (emphasis in

original).  The Court emphasized that "Plaintiff's failure to comply with this directive may result

in the Court striking Mr. Hughes and/or Dr. Peterson as experts" and that "[a]ny additional

discovery conducted by Plaintiff is *limited* to deposing any experts designated by Defendant."

*Id.* at 5 (emphasis in original).

Plaintiff supplemented her expert disclosures on June 26, 2013.  Defendant deposed Mr.

Hughes on September 18, 2013 to clarify the subject matter of Hughes's expected testimony.

The adequacy of these supplemental disclosures is the issue raised in Defendant's motion to

strike.

**2.  Discussion.**

**A.  Motion to Strike**

Defendant's motion to strike asserts that Plaintiff violated a court order by failing to

adequately supplement the disclosures of Mr. Hughes and Dr. Peterson in compliance with Rule

26(a)(2).

Federal Rule of Civil Procedure 26(a)(2)(A) requires litigants to disclose "the identity of

any witness [they] may use at trial to present evidence under Federal Rule of Evidence 702, 703,

or 705."  Rule 26(a)(2)(B) further requires litigants to produce written reports for any witness

who is "retained or specially employed to provide expert testimony in the case" or "whose duties

as the party's employee regularly involve giving expert testimony."  *Id.*  Those reports must

include:

> (i) a complete statement of all opinions the witness will express and the basis and
> reasons for them; (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them; (iv) the
> witness's qualifications, including a list of all publications authored in the
> previous 10 years; (v) a list of all other cases in which, during the previous 4
> years, the witness testified as an expert at trial or by deposition; and (vi) a

statement of the compensation to be paid for the study and testimony in the case.
Fed.R.Civ.P. 26(a)(2)(B).  Rule 26(a)(2)(C), while less onerous, requires that the disclosure of witnesses who do not need to provide a written report must nevertheless disclose: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

Rule 37(b)(2) gives teeth to a court imposed order to provide or permit discovery under Rule 26(a)(2) by permitting a trial court to impose sanctions when a party fails to obey an order to provide or permit discovery.  *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995).  Among the sanctions available, the express terms of Rule 37(b)(2) permit a trial court to:

> (i) direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) strik[e] pleadings in whole or in part; (iv) stay[] further proceedings until the order is obeyed; (v) dismiss[] the action or proceeding in whole or in part; (vi) render[] a default judgment against the disobedient party; or (vii) treat[] as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

In determining what sanction to impose under Rule 37(b)(2), this Court is guided by consideration of four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective."  *S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

### i.  Richard T. Hughes, P.E.

Plaintiff seeks to introduce testimony from Hughes stating that the relevant parking barriers violated several building codes, violated the industry standard for parking curbs, and proximately caused Plaintiff's injuries.  ECF No. 33-2 at 26.

Defendant contends that Hughes's report remains insufficient under Rule 26(a)(2)(B) in several ways.  ECF No. 31-1 at 6.  First, Defendant argues that the report does not adequately explain (1) what constitutes a means of egress; (2) what constitutes "normal" behavior when a person is walking into a store; and (3) the reasons for his opinion that Plaintiff did not notice the curb until it was too late.  *Id.* at 8-10.  While the Court recognizes that Hughes's report would benefit from some additional detail, the Court is not convinced that this lack of detail prevents the disclosure from complying with Rule 26(a)(2)(B).  *See Golden Nugget, Inc. v. Chesapeake Bay Fishing Co., L.L.C.*, 93 F. App'x. 530, 536 (4th Cir. 2004) ("We agree with the district court's conclusion that while GNI's theory of causation could have been articulated more definitively, it was generally disclosed in West's Expert Report . . . [and] . . . [t]hus, the district court did not abuse its discretion in allowing the testimony.").

Second, Defendant stresses that Hughes's deposition testimony, in attempting to justify his conclusion that the parking barriers constitute a dangerous condition, relies on several building codes that were not included in his expert report.  *Id.* at 4.  Indeed, Hughes's report relies on the International Building Code (IBC), the American Society of Testing Materials (ASTM) and the Americans with Disabilities Act (ADA), however, Hughes's deposition testimony also mentions the Building Officials and Code Administrators International Building Code (BOCA), the American National Standards Institute (ANSI), and the International Property Maintenance Code (IPMC).  For example, at his deposition, Hughes explained to defense

counsel that "before the International Building Code you had what was called the BOCA code" and that this parking barrier constituted "a violation of the BOCA Code at the time, and when they adopted the IBC Code it was still in violation of it, and when the 1992 Americans with Disabilities Act came out, it was in violation of that."  ECF No. 31-4 at 38.  It appears that Hughes's discussion of these additional code sections at his deposition was primarily for background purposes, but at no point does he suggest that he cannot form an opinion about the danger of the parking barriers without relying on the BOCA, ANSI or IPMC codes.  His report relies on the IBC, the ASTM, and the ADA, and these are the code sections that will be available to him at trial to justify his conclusions.[1]

Defendant next argues that Hughes's report did not disclose all of the facts and data that he considered when forming his opinions.  Specifically, Defendant asserts that Hughes never disclosed how he determined that (1) Plaintiff's eyes were focused on a stair tower 100 feet away from her vehicle just before she fell; and (2) the parking barrier was 3 ¼ inches high, 5 feet and 10 ½ inches long and 5 ¾ inches wide.  Hughes testified at his deposition that he obtained these measurements from Plaintiff's counsel during a telephone call on April 17, 2013.  ECF No. 31-4 at 19.  He also confirmed that he did not actually visit the site until the morning of his deposition on September 18, 2013.  ECF No. 31-4 at 9.  That Hughes did not personally collect the relevant measurements or visit the site until after his report had been completed certainly does not help the persuasiveness of his report.  The Court previously informed Plaintiff that "[a]ny additional discovery conducted by Plaintiff is *limited* to deposing any experts designated by Defendant." ECF No. 26 at 5.  Thus, any information that Hughes may have obtained at his site visit will not

---

[1] Defendant also argues that Plaintiff did not disclose all of the exhibits (i.e. sections of building codes) that were used to support Hughes's opinions in violation of Rule 26(a)(2)(B)(iii).  ECF No. 31-1 at 12.  This argument assumes that Hughes intends to use these additional codes to support his opinions, but Hughes never makes this claim.  To be sure, Hughes will not be able to rely on any exhibits that were not included in his initial or supplemental report.

be admissible at trial.  As for the reliability of the measurements used by Hughes in fashioning his report, this is an issue ripe for cross-examination at trial, but it does not require the striking of Hughes's report in its entirety.

Next, Defendant argues that Hughes failed to provide a sufficient case list because one case listed the wrong jurisdiction, one case did not list a jurisdiction, and other cases provided incomplete party names.  ECF No. 31-1 at 13-14.  Defendant fails to state how it has been harmed by these minor errors and, in any event, it appears Defendant has since obtained the missing case information.

Finally, Defendant asserts that Hughes failed to sufficiently disclose his expert fees. Rule 26(a)(2)(B) states that an expert report must contain "a statement of the compensation to be paid for the study and testimony in the case."  Hughes's report, under the heading "Compensation," states: "$125 / Hr. with no fee for initial consultation and traveling.  Many past projects completed for under $2,500.  Approximate cost given up front for cost containment purposes."  ECF No. 31-2 at 9.  Subsequently, Plaintiff produced an invoice of $2,000 for preparing his expert report, an invoice of $360 for gathering his list of prior court testimony, and an invoice of $1,500 for attending Defendant's deposition.  ECF No. 31-5 at 1-3.  Defendant contends that Hughes's report should have disclosed how many hours he spent preparing the report and that he should have provided the three invoices prior to his deposition.  ECF No. 31-1 at 14.  The Court acknowledges that such information should have been provided earlier, but also acknowledges that it has since been provided, and again, Defendant has failed to show that it has suffered meaningful prejudice.  The Court is not inclined to conclude that these omissions invalidate his compliance with Rule 26(a)(2)(B).

In sum, the Court concludes that the deficiencies in the report are minor and thus do not warrant exclusion of Mr. Hughes's testimony. The Court forms this conclusion on the basis of the four factors discussed in *Sherwin-Williams*: the presence of bad faith, the amount of prejudice, the need for deterrence, and whether less drastic sanctions are available. 318 F.3d at 597. Here, while the Court recognizes a need to deter a disregard for court-imposed deadlines, Defendant has failed to show that the deficiencies in Hughes's report were the result of bad faith or that the deficiencies caused significant prejudice. Defendant's motion to strike the testimony of Mr. Hughes will be denied.[2]

### ii. Dr. Peterson

Dr. Peterson is Plaintiff's treating physician and therefore qualifies as a hybrid fact/expert witness. This type of witness generally is not required to provide a written expert report under Rule 26(a)(2)(B). Plaintiff, however, is still required to conform with Rule 26(a)(2)(C), which requires a party to disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and a summary of the facts and opinions to which the witness is expected to testify." Plaintiff had (at least) three opportunities to comply with this rule, but failed to do so on all three occasions. Plaintiff should have provided the relevant information in her initial disclosure on April 18, 2013, in her opposition to Defendant's motion in *limine* on May 13, 2013, and in her supplemental disclosure June 26, 2013. Plaintiff failed to comply despite numerous requests from Defendant and a specific instruction from the Court to ensure that Dr. Peterson's report fully and completely complied

---

[2] Defendant also claims that it suffered prejudice because "Hughes unilaterally terminated his deposition after approximately 3.5 hours," citing a "prior obligation and/or purported medical condition." ECF No. 31-1 at 20. As a result, Defendant contends that its "parking lot safety expert remains without sufficient information to fully evaluate the reliability of Hughes' undisclosed reference material or identify and analyze the specific provisions of the previously undisclosed building codes Hughes cited during his deposition." *Id.* Plaintiff's counsel previously offered to "travel to Richmond (location of defense counsel's office), in order to complete the deposition" and "remain[s] open to rescheduling the deposition at a time mutually convenient with Defendant's counsel." ECF No. 33-1 at 9. The Court will grant Defendant leave to continue Hughes's deposition if Defendant chooses to do so. In the event the deposition is re-opened, Defendant will be authorized to elicit further testimony from its own experts to respond to any new information offered by Hughes.

with Rule 26(a)(2)(C).  ECF No. 26 at 4.  Plaintiff maintains the mistaken belief that, simply

because she provided Defendant with her medical records, she has somehow, in her words,

"provide[d] Defendant with a thorough summary of the content of Dr. Peterson's upcoming

expert testimony" and "provided complete information regarding Ms. Scheer's injuries and

course of treatment, as well as Dr. Peterson's conclusions regarding said injuries and treatment."

ECF No. 31-3 at 3.  Rule 26(a)(2)(C) is clear, as was the Court's Order to fully and completely

comply with said rule: the "disclosure must state the subject matter on which the witness is

expected to present evidence . . . and a summary of the facts and opinions to which the witness is

expected to testify."[3]

Having concluded that Plaintiff failed to comply with Rule 26(a)(2)(C) in violation of

this Court's Order, the Court must determine the appropriate sanction.  Again, in determining

what sanction to impose under Rule 37(b)(2), this Court is guided by consideration of four

factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that

noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-

compliance, and (4) whether less drastic sanctions would have been effective."  318 F.3d at 597.

First, the Court finds that Plaintiff acted in bad faith because of the pattern of indifference

for the rules of discovery and the authority of this Court.  "In such cases, not only does the

noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore

---

[3] In Plaintiff's opposition to Defendant's motion to strike, she finally attempts to comply with Rule 26(a)(2)(C), well over one year past the actual deadline of April 18, 2013 to provide such information:

> The subject matter and summary of Dr. Peterson's expected testimony is the following: Mark A. Peterson, M.D. will testify regarding the injuries sustained by the Plaintiff, the surgery performed and the continuous medical treatment she received until her release from medical care after reaching maximum medical improvement for the injuries.  Dr. Peterson will testify that the injuries sustained by the Plaintiff were as a result of her fall in the parking lot at the Defendant's business location on the date alleged.  He will also testify that that [sic] all the costs associated with the Plaintiff's medical treatment were fair and reasonable for this type of injury.

ECF No. 33-1 at 8.

such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 504 (4th Cir. 1978).  Here, the Court gave Plaintiff a specific order to fully and completely comply with Rule 26(a)(2)(C).  Despite this order, Plaintiff failed to provide even a cursory description of Dr. Peterson's proposed testimony.

As to the second element, prejudice, Plaintiff's dilatory conduct has prejudiced Defendant by unnecessarily delaying discovery and the adjudication of this matter.  On June 5, 2013, the Court previously determined that Plaintiff's belated expert disclosures were "not harmless" because Defendant "forewent deposing . . . Dr. Peterson . . . and allocated its time and financial resources toward preparing for Scheer's deposition and for summary judgment."  ECF No. 26 at 4.  Moreover, Plaintiff still has not indicated whether Dr. Peterson will testify that Plaintiff sustained permanent injuries from her fall or whether she will require future medical treatment as a result of the incident.  Thus, Defendant is left to speculate whether the risk of Plaintiff's permanent injury claim would justify the expense of deposing Dr. Peterson or justify retaining its own medical expert.

As to the third factor, deterrence, it is clear that such "noncompliance . . . stalling and ignoring the direct orders of the court with impunity . . . must obviously be deterred." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 93 (4th Cir. 1989).

Finally, the Court finds that alternative sanctions would be ineffective in deterring future disrespect for the judicial system.  The Court previously warned Plaintiff that failing to comply with Rule 26(a)(2)(C) may result in the Court striking Dr. Peterson as an expert.  The Court cannot allow Plaintiff to continually disobey Court orders and continually prejudice Defendant's

ability to litigate this case.  Thus, striking Dr. Peterson's expert testimony is warranted.  *See*

*Meredith v. Int'l Marine Underwriters*, Case No. GLR 10-837, 2012 WL 3025139 (D. Md. July

20, 2012) (granting a motion to strike an expert designation under Rule 37(b)(2) because of a

pattern of indifference for the rules of discovery, dilatory conduct that resulted in prejudice to the

opposing party, a need for deterrence, and a failure to comply with specific instructions issued by

the Court).

### B.  Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247 (1986).  "For purposes of summary judgment, a fact is material if, when

applied to the substantive law, it affects the outcome of the litigation."  *Nero v. Baltimore Cnty.,*

*MD*, 512 F. Supp. 2d 407, 409 (D.Md.2007) (citing *Anderson*, 477 U.S. at 248).  "Summary

judgment is also appropriate when a party 'fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial.'"  *Laura Campbell Trust v. John Hancock Life Ins. Co.*, 411 F.Supp.2d

606, 609 (D. Md. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

A party opposing a properly supported motion for summary judgment bears the burden of

establishing the existence of a genuine issue of material fact.  *Anderson*, 477 U.S. at 248-49.

"When a motion for summary judgment is made and supported as provided in [Rule 56], an

adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,

but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth

specific facts showing that there is a genuine issue for trial." *Bertrand v. Children's Home*, 489 F. Supp. 2d 516, 518 (D. Md. 2007) (citing Fed. R. Civ. P. 56(e)). "The facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party." *Id.* at 518-19 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "The court, however, cannot rely upon unsupported speculation and it has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial." *Id.* at 519 (citing *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987)).

Here, Defendant first argues that summary judgment is warranted because Plaintiff cannot prove that she actually tripped on a parking barrier. Defendant points to Plaintiff's testimony where she states: "I'm assuming I tripped over one of the parking stops" because "[t]hat was the only thing that was anywhere near where I was or where I landed, that was raised off the ground." ECF No. 41-1 at 9. Defendant fails to note, however, that in the next two lines, in response to defense counsel's question "do you know what you tripped on?" Plaintiff replied: "It was a parking stop." *Id.* Plaintiff also responded "Yes, I guess" to the question "As we sit here today, do you know that the parking stop is what you tripped over?" and explained that "I had tripped and I—and I saw that this obstacle was there and so that's what made me reach the conclusion." *Id.* At the very least, this testimony establishes a genuine issue of material fact regarding whether Plaintiff tripped over a parking barrier.

Defendant next contends that Plaintiff failed to establish that Defendant had constructive notice of the alleged improper lighting in the parking lot. ECF No. 41 at 9. It is not necessary for the Court to resolve this issue at this time. Regardless of whether the parking lot had deficient lighting and regardless of whether Defendant was aware of this alleged deficiency,

Plaintiff has generated a jury issue on whether the parking barriers "were placed and situated in such a fashion by Costco as to create an unsafe condition to thwart the safe ingress and egress of its business invitees."  ECF No. 2 at 2; ECF No. 42 at 5.  Plaintiff testified that the parking barrier

> was in a place where you wouldn't expect to see such dividers.  I know the custom in that particular store where there are places to return carts are blocked off with metal and – so you know not to walk there, but there wasn't anything above the ground indicating that area was to be divided off.  It was just in a row of parking spaces and I wasn't expecting [it].

ECF No. 45-1 at 8.  Indeed, pictures of the disputed area indicate that the relevant parking barriers were located in an area between two parking spaces and were situated parallel to the lines on the sides of the parking spaces and perpendicular to the lines drawn at the front of the parking spaces.  As stated by Plaintiff, "I don't think you would expect to see concrete dividers" in this location because "they are usually [situated] to stop you from going over your space when someone is parking opposite you" but "these parking stops . . . were among the parking spaces facing parallel to the spaces."  *Id.* at 8-9.  This testimony creates a genuine issue of material fact as to whether Defendant had constructive notice of a dangerous condition on its property related to the placement of the parking barriers, regardless of the alleged deficiency in lighting.

Moreover, this genuine issue of material fact exists independent of Hughes's expected expert testimony.  While Hughes's testimony may be necessary to prove the violation of a statute, a jury could reasonably conclude, without the benefit of expert testimony, that the parking barriers constituted a dangerous condition on Defendant's property.  *Briggs v. Cochran*, 17 F. Supp. 2d 453, 461 (D. Md. 1998); *Exxon Mobil Corp. v. Ford*, 433 Md. 426, 490 (2013) ("It is well established that expert testimony is not required on matters of which the jurors would be aware by virtue of common knowledge.").

Defendant next asserts that Plaintiff cannot recover because the parking barrier was an open and obvious hazard.  "An owner owes a duty to an invitee to warn of known hidden dangers, not open or obvious ones."  *Ramseur v. United States*, 587 F. Supp. 2d 672, 684 (D. Md. 2007) (citing *Yaniger v. Calvert Bldg. & Constr. Co.*, 183 Md. 285, 288 (1944)). Specifically, Defendant contends that the barriers were open and obvious because (1) Plaintiff was wearing her glasses; (2) the barriers were bright yellow, which contrasted with the black pavement; (3) there was some natural light filtering into the parking area; and (4) subsequent to her fall, Plaintiff was able to locate a loose diamond among other debris, which indicates that lighting was not an issue.  ECF No. 41 at 11-12.  These proposed facts do little to show that the placement of the parking barriers was an open and obvious condition.  Even assuming all of these facts to be true, a reasonable jury could still conclude that the parking barriers, which were "in a row of parking spaces" and not located in a place where "you would expect to see concrete dividers," were not an open and obvious hazard.

Defendant relies on *Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F. Supp. 2d 351 (D. Md. 1998) to support its argument that the parking barriers were an open and obvious condition. In *Gellerman*, the plaintiff tripped over an expansion joint located in a small space between a curb and a sidewalk.  *Id.* at 353.  The Court concluded that "as a matter of law, the condition of the curb/sidewalk joint on defendants' premises was open and obvious."  *Id.* at 354.  However, as this Court previously concluded in *Payne v. Wal-Mart Stores, Inc.*, Case No. SAG 10-2241, 2011 WL 6738501 (D. Md. Dec. 21, 2011), the facts in *Gellerman* are dissimilar from a typical trip and fall case.  The *Payne* Court noted:

> *Gellerman* involved a plaintiff who tripped over a small space in the joint between a curb and a sidewalk.  In ruling that the condition of the sidewalk on the defendants' premises was open and obvious as a matter of law, the *Gellerman* court relied on several cases in which a variety of courts held that irregularities in

> sidewalks and pavement were common enough that they constitute open and
> obvious conditions for which a landowner has no duty to warn pedestrians.
> Unlike the sidewalk at issue in *Gellerman,* there appears to be no legal consensus
> in Maryland as to whether conditions creating uneven or unstable surfaces in in-
> store walkways are open and obvious as a matter of law.

*Id.* at *3 (internal citations omitted).  The *Payne* Court emphasized that whether a store

knowingly creates a dangerous condition or whether a customer exercises a reasonable degree of

care are questions most commonly reserved for finders of fact.  *Id.* at *2.  The Court also

recognized that "Maryland courts typically deny summary judgment motions in cases in which a

store patron fell as a result of an obstacle known to or created by store employees."  *Id.* (citing

*Tennant v. Shoppers Food Warehouse MD. Corp.*, 115 Md. App. 381, 394-95 (1997) ("[I]t is for

the jury to decide whether, in the first instance, [a grocery store chain] created a dangerous

situation [when its employees left a pile of cabbage leaves and an empty crate in an aisle] . . .

[T]he jury must also determine if [the plaintiff] negligently failed to appreciate the unsafe

conditions"); *Diffendal v. Kash & Karry Service Corp.*, 74 Md. App. 170, 178 (1988) (summary

judgment inappropriate in a case in which the plaintiff tripped over an L-cart left in an aisle of

defendant's supermarket); *Chalmers v. Great Atlantic & Pacific Tea Co.*, 172 Md. 552, 558

(1937) ("Whether under the circumstances [a grocery store's] conduct in placing the box in the

aisle, or permitting it to remain there, was consistent with due care, was peculiarly a jury

question. Nor . . . can it be said as a matter of law that the plaintiff was guilty of contributory

negligence.")).

 Finally, Defendant argues that Plaintiff is barred from recovery because of her own

contributory negligence.  ECF No. 41 at 14.  Defendant asserts that Plaintiff was negligent

because she chose to park on the lower level of the parking deck instead of the upper level,

which was presumably more illuminated and admittedly more familiar to Plaintiff.  *Id.*  The

Court cannot hold as matter of law that Plaintiff was negligent simply for choosing to park in the

lower level of the parking deck.  While it may have been darker and less familiar to Plaintiff,

whether Plaintiff's conduct was reasonable under the circumstances is a factual question best left

for the jury to decide.

**3.   Conclusion.**

The Court will grant Defendant's motion to strike as to Dr. Peterson, deny its motion to

strike as to Mr. Hughes, and deny Defendant's motion for summary judgment.

A separate order will be entered.

Date:   July 29, 2014                                    _____/s/_____
                                                          WILLIAM CONNELLY
                                                          United States Magistrate Judge